UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF James Michael COLE's Apple IPhone 13; Serial number: RWRPW60JR0; IMEI: 35 777433 108194 2. | Case No. 5:22-MJ-5201-MAS |

**AFFIDAVIT IN SUPPORT OF AN**
**APPLICATION UNDER RULE 41**
**FOR A WARRANT TO SEARCH AND SEIZE**

I, John Z. Downing being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been so employed since March 2020. I am currently assigned to the Louisville Division of the FBI, specifically the Joint Terrorism Task Force (JTTF), and I work on a variety of criminal and national security matters. From 2013 to 2020, I was a Police Officer for the University of Kentucky Police Department in Lexington, Kentucky. From 2017 to 2020, I was assigned to the FBI Joint Terrorism Task Force as a Task Force Officer. I am currently assigned to the Lexington Resident Agency of the Louisville Field Office, which conducts investigations into gangs, drugs, violent crimes against children, financial crimes, and terrorism. My duties, responsibilities, and training as a Special Agent with the FBI include investigating violations of federal law. I have been involved in the execution of search and arrest warrants. I have experience investigating national security threats, to include international terrorism and domestic terrorism. As a federal law enforcement officer, I am authorized to execute search and seizure warrants under Rule 41 of the Federal Rules of Criminal Procedure.

1

2. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedures for a warrant to search James Michael COLE's Apple IPhone 13; Serial number: RWRPW60JR0; IMEI: 35 777433 108194 2 (hereinafter DEVICE) further described in Attachment A, for things described in Attachment B.

3. The facts in this affidavit come from my personal observations, my training and experience, and information provided from other agents, witnesses, and agencies. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant. It does not set forth all of my knowledge, or the knowledge of others, about this matter.

4. Based on my training and experience and the facts set forth in this affidavit, I respectfully submit that there is probable cause to believe that violations of 18 U.S.C. § 922(g) have been committed by James Michael COLE and/or Daniel BRAINARD. There is also probable cause to search the DEVICE, further described in Attachment A, for the things described in Attachment B.

## PROBABLE CAUSE

5. On June 3, 2022, the Lexington FBI Resident Agency (RA) executed a search warrant at 1271 Camargo Road, Mt Sterling, Kentucky, the residence of James Michael COLE, hereinafter COLE. I submitted an affidavit in support of the application for this search warrant, which set forth probable cause to believe that COLE was committing violations of 18 U.S.C. § 371 and 26 U.S.C. § 5861(b), (c), (d), (i), based on information gathered by the FBI on and after December 21, 2021. During the search, the DEVICE was located on the sink of the bathroom connected to COLE's bedroom. During an interview with COLE, he identified the DEVICE as his iPhone by providing Affiant the passcode, which was confirmed as being the correct passcode.

6. During the search of the residence, COLE agreed to be interviewed by Affiant. During the interview, COLE was asked about his illegal drug usage. COLE stated he last snorted cocaine "yesterday," last smoked marijuana "last night," and last used "shrooms" on the preceding New Years Eve. COLE later made mention of being dropped off at rehab for ten days in 2016 due to a drug problem. COLE informed there would be a "tin thing" located within his residence that contained Xanax pills and possibly cocaine. COLE referred to his marijuana as being "Kentucky home grown". After being interviewed, COLE showed Affiant and other personnel three marijuana plants growing in the back yard of his residence.

7. On December 31, 2021, an FBI undercover employee ("UCE") received a text message from COLE relating to the New Years Eve drug use. That text message read as follows: "I say not tonight man I'm on them shrooms but at least we don't base anymore well maybe on New Year's Day or something you know if we ain't got nothing else to do it's raining we're not training but the training CQB tomorrow so no chicken bone and basing the problem away from that white Smokey devil then Robbie come along."

8. During the search of COLE's residence, 3.5 tablets of Xanax in an unmarked pill container, six marijuana cigarettes, and a small plastic baggie of what looks to be methamphetamine were located in the bathroom that is connected to COLE's bedroom. The drugs were located within a black and orange tin container that was placed next to the toilet along with a variety of tools (such as a pocket knife, dremel tool, screwdrivers, etc.). The law enforcement agents performing the search assessed that the tools seen in the open were items that could be used to work on firearms and opened the tin container to determine whether it also contained similar tools or other evidence responsive to the warrant. Agents immediately identified the

container's contents as illegal drugs upon opening the container. Photographs of the container, as first seen in the bathroom and then as opened, are below:





9. After being interviewed, COLE walked Affiant and other personnel around the back yard of his residence to identify the placement of three marijuana plants. Kentucky State Police took possession of all the above mentioned drugs and arrested COLE for the following Kentucky state charges; Possession of Controlled Substance 1st Degree (Methamphetamine), Possession of Marijuana, Possession of Controlled Substance 3rd Degree (Drug Unspecified) and Cultivating in Marijuana < 5 Plants 1st Offense.

10. After returning to the Lexington FBI RA, Affiant opened the photos application on DEVICE to search for evidence of COLE involving violations of 18 U.S.C. § 371 (conspiracy to violate provisions of the National Firearms Act ("NFA")) and 26 U.S.C. § 5861(b), (c), (d), (i) (NFA violations), including firearm research, purchase, maintenance, and use. Upon first glance, Affiant observed multiple photographs and videos involving firearms. Within the first set of photographs, Affiant observed a photograph of Daniel BRAINARD, hereinafter BRAINARD, a known associate of COLE's carrying an AR-15 style rifle. Affiant compared the photograph located on DEVICE to BRAINARD's Kentucky Driver's License photograph and it was a positive match. BRAINARD is also wearing a hat in the photograph on DEVICE that reads "BRAINARD Welding LLC" and a phone number ending in 2586. The Lexington FBI RA is currently investigating BRAINARD involving violations of 18 U.S.C. § 922(g) (Felon in possession of a firearm) as BRAINARD is a convicted felon, as a result of a conviction that took place on or about October 12, 2004.

11. During the previous interview with COLE, Affiant questioned COLE about BRAINARD and his possession of firearms. When asked if Brainard owns any firearms, COLE confirmed BRAINARD owns an AR styled rifle that he believes is a Smith and Wesson M&P. When asked if BRAINARD owns any handguns, COLE responded, "I'm sure he does". During

5

the interview, COLE mentioned BRAINARD has attended trainings and campouts where BRAINARD has participated in firearms training. COLE has observed BRAINARD shoot firearms and described him as "Not a very good shot".

12. The FBI has identified COLE as a member of an online anti-government group engaged in plotting acts of violence. At the group's formation, in the fall of 2020, the initial focus of violent action was surrounding the 2020 election results and an attempt to disrupt the transfer of power.

13. Militia extremists sometimes call themselves three percenters ("III%ers" or "threepers") based on the myth that only three percent of American colonists took up arms against the British during the American Revolution. While many independent or multi-state militia groups incorporate III% in their unit names, the term is less indicative of membership in a single overarching group than it is representative of a common belief in the notion that a small force with a just cause can overthrow a tyrannical government if armed and prepared.

14. COLE stated within the interview on June 3, 2022 he used to be the leader of a local militia group, which is located in Kentucky but recently stepped down from the leadership position. Based on the investigation, including information supplied by COLE during his interview, I know that many members of this local militia group, including BRAINARD, are members of the same online anti-government group as COLE. Within this online group and the militia, COLE is referred to as Colebuckt and BRAINARD is referred to as CAREBEAR. Within these online chats which were collected by an FBI Online Covert Employee throughout investigation, Affiant observed many conversations involving BRAINARD involving the use of firearms.

15. In or about October 2021, BRAINARD posted the following within the group chat: "Training at the Keep this weekend need as many to show up as we can get. That goes for you guys in the northern and southern part of the state. Sound off if you can make it" and "If you come to training make sure you bring a Pew that you will use. If you bring something that you're not gonna use then leave it at home I know money is tight but we still need to train". Later within this conversation, a telegram user asked BRAINARD "Is there a 50 yard are to zero?" and BRAINARD responded "Yes". Based on training and experience, including past observations of the term "pew" or "pew-pew" being used in connection with firearms, Affiant believes the term "Pew" in this conversation is referring to a firearm.

16. In or about 2021, a telegram user within the group chat posted a photo which showed a decal with the verbiage "The Tree of Liberty Must Be Refreshed From Time to Time with The Blood of Patriots and Tyrants". In response to this post, a second telegram user responded "Carebear has that on his lower of one of his rifles". Based on training and experience, Affiant believes "lower" refers to a lower receiver to a AR style rifle.

17. In or about April 2022, COLE posted the following within the group chat: "We have training this weekend bring at least 60 rds of 556 and 50 9mm everybody shoots that means every everybody shoots lol". Later within the chats, BRAINARD posted the following: "I left my lantern on the ground over by the tree by the fire pit. If someone could please pick it up and ask @Colebuckt to put it in his truck I would appreciate it. Thanks", "Had a great time at training today. Thank you @robbie_11B for the little class that you put on. I did learn a lot. And @squatch Thank you for the class you put on. I have some of those things for my pack but what you showed helped give me a better idea of some things I can get to put in with what ive got" and "Made it

7

home about 15 minutes ago. Thanks to everyone for helping my kiddos too. They had fun and really enjoyed what y'all taught them"

18. Within the above-mentioned chats, a user called "Unsupported User" posted multiple photographs and videos from the training. Within these photographs and videos an individual in a gray shirt possessing firearms, specifically an AR style rifle and a handgun. Based on a visual comparison of the photo with information gained in the investigation, including BRAINARD's driver's license photo, I have identified the individual in the gray shirt as BRAINARD:



19. COLE stated within the interview on June 3, 2022 that he primarily uses his phone and does not possess a computer. Throughout the investigation, COLE has communicated with an FBI Online Covert Employee ("OCE") using the Telegram application and communicated with an FBI Undercover Employee ("UCE") via phone calls and text messages. The OCE has observed

8

COLE posting photos within a Telegram group chat, and the UCE has been the recipient of photos sent by COLE through a text messaging app. Based on my knowledge of this investigation, including COLE's statements during the June 3, 2022 interview, I believe that COLE made these communications and transmitted these images by using the DEVICE. Based on my training and experience and information gleaned through this investigation, I believe it is likely that DEVICE contains evidence relating to violations of 18 U.S.C. § 922(g) (possession of firearms by prohibited persons) by COLE (being an unlawful user of and/or addicted to controlled substances as specified in 18 U.S.C. § 922(d)(3)) and/or BRAINARD (being a convicted felon as specified in 18 U.S.C. § 922(d)(1)), each of whom is prohibited to possess a firearm.

## **ELECTRONIC STORAGE AND FORENSIC ANALYSIS**

20. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

21. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the Device because:

   a. Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

22. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose

many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

23.   *Manner of execution.*  Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises.  Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

24.   Based on the foregoing, I believe that probable cause exists to believe that there have been violations of 18 U.S.C. § 922(g), that they have been committed by James Michael COLE and/or Daniel BRAINARD and that the evidence of such violation exists in the DEVICE. Therefore, I request that the Court issue the proposed search warrant.

25.   I respectfully request that the Court issue a warrant authorizing the search of the DEVICE described in **Attachment A** for the evidence described in **Attachment B**.

## REQUEST FOR SEALING

26.   It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of these applications. I believe that sealing this document is necessary because the items and information to be seized are relevant to an ongoing investigation into the criminal organizations as not all of the targets of this investigation will be searched at this time. Based upon my training and experience, I have learned that online criminal actively search for criminal affidavits and search warrants via the Internet, and disseminate them to other online criminals as they deem appropriate, i.e., post them publicly online through the carding forums. Premature disclosure of the contents of this affidavit and related documents may have a significant and negative impact on the continuing investigation and may severely

jeopardize its effectiveness.

                                              Respectfully submitted,

                                              /s/ John Z. Downing
                                              John Z. Downing
                                              Special Agent
                                              Federal Bureau of Investigation

Transmitted by email and attested to by telephone in accordance with Fed. R. Crim. P. 4.1:

Dated: July 14, 2022

                                              MATTHEW A. STINNETT
                                              United States Magistrate Judge